# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM A. YUREK, | : CASE NO. 1:13-cv-01571-YK-GBC |
| Plaintiff, | : (JUDGE KANE) |
| v. | : (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY, | : REPORT AND RECOMMENDATION TO<br>: REMAND DECISION OF COMMISSIONER<br>: DENYING PLAINTIFF'S APPLICATION<br>: FOR SUPPLEMENTAL SECURITY |
| Defendant. | : INCOME |
| | : Docs. 9,16,17,20 |

**REPORT AND RECOMMENDATION**

**I. Procedural History**

On June 30, 2010, William A. Yurek ("Plaintiff") protectively filed a Title XVI application for Supplemental Security Income ("SSI"), alleging disability since January 1, 2002. (Tr. 102-08).

This application was denied, and on November 22, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), where Plaintiff was represented by counsel, and a vocational expert testified. (Tr. 38-60). On February 28, 2012, the ALJ issued a decision finding that Plaintiff

was not disabled and thus not entitled to SSI. (Tr. 21-37). Plaintiff timely requested review by the Appeals Council on March 21, 2012 (Tr. 18-20). On April 12, 2013, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner (Tr. 1-7).

On June 11, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits. Doc. 1.

On September 11, 2013, Commissioner filed an answer and administrative transcript of proceedings. Docs. 11,12. In October 2013 and January and March 2014, the parties filed briefs in support. Docs. 13, 20, 21. On April 30, 2014, the Court referred this case to the undersigned Magistrate Judge. On May 30, 2014, Plaintiff notified the Court that the matter is ready for review. Doc. 23.

## II.     Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200.

This is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more than a mere scintilla" of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). It may be

less than a preponderance. Jones, 364 F.3d at 503. Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Moreover, the Act requires further that a claimant for disability benefits must show that he has a physical or mental impairment of such a severity that: "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

### III. Relevant Facts in the Record

#### A. Background

Plaintiff was born in November 1989 (Tr. 102), and was thus 22 years old as of the ALJ's decision. He has a high school education with special education classes (Tr. 43), and has worked in the relevant past as a fast food restaurant cleaner (Tr. 53).

Plaintiff alleged disability due to anxiety attacks, attention deficit hyperactive disorder

(ADHD), depression, stomach problems, kidney problems, blood in urine, inability to see without glasses, and asthma (Tr. 102-08, 113, 122, 150). The agency denied his claim administratively on November 2, 2010 (Tr. 63). Thereafter, Plaintiff, represented by counsel, appeared and testified at an administrative hearing (Tr. 38-60, 68). The ALJ found Plaintiff was not disabled and was capable of performing work such as tagger, trimmer, and machine operator (Tr. 32).

## B. Relevant Medical Evidence

Plaintiff underwent a psychological re-evaluation on March 23, 2009, wherein Brooke Egbert, Psy.D., a licensed psychologist, diagnosed him with depressive disorder NOS in remission, rule out borderline intellectual functioning, and a global assessment of functioning (GAF) of 57 (Tr. 479). The psychologist reported that Plaintiff was oriented to time, place, and circumstance, his thought content was negative for any signs of thought disorder, his current mood was good, his speech seemed typical with no noted abnormalities, he had limited insight and judgment, and his intellectual functioning presented with borderline to low average (Tr. 478). The psychologist also reported that Plaintiff seemed to exhibit signs of ADHD, that his depression appeared to be in remission, and that his prognosis for future gains was fair to good (Tr. 479).

Plaintiff's psychiatrist John Theroux, M.D., consistently diagnosed Plaintiff with a GAF of 55 (moderate symptoms) (Tr. 339, 341, 343, 345, 349, 352, 353, 355, 357, 359, 363, 366, 368, 374, 377, 379, 381, 383, 385).

On September 30, 2010, Plaintiff saw state agency psychologist Jeffrey Fremont, Ph.D., for a clinical interview and administration of the Wechsler Adult Intelligence Scale – Fourth Edition. Dr. Fremont noted that Plaintiff, 20 years old, graduated from high school in the special education class, had a few friends, lived with his mother, brother and uncle, and for the most part remained

isolated (Tr. 540). During a mental status evaluation, Dr. Fremont noted that Plaintiff was alert, oriented and had intact cognitions during the interview (Tr. 540). He reported that Plaintiff's affect was appropriate to his mood, that his thought process indicated he was not particularly productive and that there were some flight of ideas, and that he was tangential with no thought disturbances. Plaintiff also had intact remote, recent past, and recent memory, somewhat impaired social judgment, very little insight, and exhibited some sign of past impulsivity (Tr. 541). Dr. Fremont diagnosed Plaintiff with ADHD by history, depression with psychotic features, borderline intellectual functioning, and a GAF of 45 (Tr. 542). He noted Plaintiff's prognosis was poor, in part because of his IQ, and that he was not capable of managing funds in a competent manner (Tr. 542). Regarding the effect of Plaintiff's impairment on function, Dr. Fremont indicated that Plaintiff read wrestling books occasionally, went to the grocery store alone or with a parent, and bought items (Tr. 542).

During IQ testing, Dr. Fremont noted that Plaintiff seemed fairly methodical in his approach to his questions, utilized a trial and error approach, sought reassurance, was cautious in his approach to all tasks presented, and asked questions when he did not understand something (Tr. 542). Plaintiff's IQ testing results revealed verbal comprehension of 68, perceptual reasoning of 77, working memory of 83, processing speed of 76, and a full-scale score of 71 (Tr. 543).

On October 28, 2010, state agency psychiatrist William Anzalone, Psy.D., reviewed Plaintiff's file and completed a Psychiatric Review Technique assessment. Rating Plaintiff's functional limitations, Dr. Anzalone reported that Plaintiff had a moderate limitation in the areas of restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace (Tr. 560). In his consultant's notes, Dr. Anzalone explained that Plaintiff received individual therapy, was prescribed psychotropic medication but was

not consistently medication compliant, and had not received any inpatient mental health treatment. He indicated that Plaintiff's consultative examiner had diagnosed Plaintiff as being in the borderline intellectual functioning range, and that Plaintiff's Children Service Center record dated August 25, 2010 indicated that he experienced difficulty controlling his anger and was defiant and violent, but was not experiencing auditory hallucinations and experienced a decrease in his paranoia (Tr. 562).

Dr. Anzalone also completed a Mental Residual Functional Capacity assessment and concluded that Plaintiff was not significantly limited in his ability to understand and remember very short and simple instructions, to carry out very short and simple instructions, to make simple work-related decisions, and to ask simple questions or request assistance (Tr. 563-64). Dr. Anzalone concluded that Plaintiff was markedly limited in his ability to understand, remember, and carry out detailed instructions, to interact appropriately with the general public, and to maintain socially appropriately behavior and adhere to basic standards of neatness and cleanliness, but was moderately limited in his ability to remember locations and work-like procedures, to maintain attention and concentration for extended periods of time, to perform activities within a schedule and to maintain regular attendance and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to travel in unfamiliar places or use public transportation (Tr. 563-64).

Dr. Anzalone further concluded that Plaintiff did not exhibit any evidence of limitation in the categories of being aware of normal hazards and taking appropriate precautions, and in setting realistic goals or making plans independently of others (Tr. 564).

Dr. Anzalone explained his above summary conclusions and clarified Plaintiff's limitations and functions. He noted that Plaintiff had not had any hospitalizations because of his mental impairment, and explained that Plaintiff's basic memory processes were intact, that he could make simple decisions, that he could carry out very short and simple instructions, that he was capable of completing personal care with frequent prompts, and retained the ability to perform repetitive work activities without constant supervision (Tr. 565).

Finally, Dr. Anzalone indicated that his residual functional capacity was consistent with Dr. Fremont's opinion and that the examining source statements in his report concerning Plaintiff's abilities in the areas of making performance, personal, and social adjustments were well supported by the medical and non-medical evidence in the file. Dr. Anzalone gave great weight and adopted Dr. Fremont's report, and reported that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite his limitations resulting from his impairment (Tr. 565).

Plaintiff underwent a psychiatric evaluation on December 27, 2010 (Tr. 624). He was found to be alert, oriented times three, coherent, and with an appropriate affect. He was currently helping his medically ill uncle who had undergone surgery and was diagnosed ADHD and a GAF of 55 (Tr. 624).

On January 14, 2011, Plaintiff saw psychiatrist Dr. Chang from Community Counseling Services of N.E. PA for an intake evaluation for anger and depression issues. Dr. Chang noted that

Plaintiff graduated from high school, took some special education classes, had friends and socialized, took two semesters of community college, did work study while in college, and left due to health issues (Tr. 614-15). A mental status evaluation indicated Plaintiff had a mildly depressed and at times irritable mood, a related affect, cooperative and controlled behavior, normal speech, average intellect, normal thought process mildly impacting auditory hallucinations, intact memory, and was oriented times three (Tr. 621). On this same date, Dr. Chang indicated in a Physician Partial Hospital/Outpatient Group Progress Note that Plaintiff had sub-average intelligence and diagnosed him with Bipolar NOS (Tr. 630). His insight and judgment were fair, his impulse control was present, and he had good motivation for treatment (Tr. 622). He was diagnosed with bipolar disorder, NOS, and a GAF of 50 (Tr. 622).

In a June 22, 2011 medical progress note, the attending clinician reported that Plaintiff had no complaints, that he was doing well, that his mood was stable, and that his anxiety was controlled. Plaintiff was alert and oriented times three, his behavior was cooperative, he had a flat affect, and his mood was euthymic (Tr. 626). He had an intact memory/intelligence and a limited insight/judgment (Tr. 626). He was diagnosed with bipolar disorder, NOS (Tr. 626).

In March 2, 2011, August 29, 2011, and June 6, 2011 physician progress notes, Dr. Shah reported that Plaintiff was alert and oriented times three, had coherent and relevant speech/motor activity, had an appropriate affect, and had intact memory/intelligence and fair insight/judgment (Tr. 625, 627-28).

### IV.     Review of ALJ Decision

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520; see also Plummer, 186 F.3d at 428. If the Commissioner finds

that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A. Plaintiff Allegations of Error

#### 1. Listing 12.05C Intellectual Disability

Plaintiff contends the ALJ erred as a matter of law in determining whether Plaintiff met the requirements of listing 12.05C (Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22 . . . [and] A valid verbal, performance, or full scale IQ of 60 through 70 and a physical

or other mental impairment imposing an additional and significant work-related limitation of function).[1] Pl. Br. at 5, Doc 13; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

### a.   Listing 12.05 Intellectual Disability Diagnostic Description

Listing 12.05 contains two parts: an introductory paragraph, and a set of four criteria (A, B, C, or D) for determining whether the required level of severity for the disorder has been established. 20 C.F.R., Pt. 404, Subpt. P, Appx. 1 § 12.05. The introductory paragraph of listing 12.05 contains the diagnostic description for intellectual disability: "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Id. If the impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." Id.; See Ogin v. Commissioner of Social Sec., No. 3:13–cv–01365, 2014 WL 2940599, at *9 (M.D. Pa. June 30, 2014).

Plaintiff contends he meets the criteria for the diagnostic description of listing 12.05. Pl. Br. at 5, Doc 13. The Commissioner argues the record does not show significantly sub-average general intellectual functioning. Comm'r Br. at 12-13, Doc 20. Specifically, the Commissioner states Dr. Fremont diagnosed Plaintiff with borderline intellectual functioning (versus significantly sub-average

---

[1] Until very recently, the Commissioner's regulations employed the term "mental retardation" in this section, and the case law in this area consistently uses the former term.

general intellectual functioning, which would be the definition of intellectual disability in listing 12.05) (Tr. 29-30, 542). Additionally, in his Psychiatric Review Technique assessment, Dr. Anzalone noted and gave great weight to Dr. Fremont's finding that Plaintiff's cognitive functioning was in the borderline intellectual functioning range (Tr. 562, 565). Comm'r Br. at 13, 15-16, Doc 20.

Plaintiff responds that Dr. Fremont's diagnosis of borderline intellectual functioning rather than intellectual disability is no bar to a finding that Plaintiff meets or equals the requirements of § 12.05C. Pl. Reply at 4, Doc 21.

Similarly, Commissioner states the ALJ noted that Dr. Egbert diagnosed Plaintiff with borderline intellectual functioning (Tr. 29, 149). Plaintiff replies Defendant's argument that Dr. Egbert did not diagnose mental retardation is unpersuasive, given that she did not administer IQ testing and thus had no clinical basis to make any diagnosis in this area (Tr. 476-80). Pl. Reply at 4 n.2, Doc 21.

Commissioner states the ALJ also correctly noted that Plaintiff had been diagnosed with an average IQ on January 14, 2011 (Tr. 30). This diagnosis resulted from a mental status evaluation that was administered, and that was signed not only by a clinician, but also by Dr. Chang, a psychiatrist with the Community Counseling Services (Tr. 621-23). While Plaintiff refers to Dr. Chang's January 14, 2011 progress note (Pl. Br. 8, n.4), where he noted that Plaintiff had sub-average intelligence (Tr. 630), Dr. Chang did not, however, diagnose Plaintiff with a significantly sub-average general intellectual functioning, as required by 12.05. Comm'r Br. at 16-17, Doc 20.

As to Plaintiff's alleged intellectual disability, the ALJ noted Plaintiff had borderline intellectual functioning evident in his IQ testing; in high school he had borderline intellectual functioning with a GAF of 57; and Dr. Fremont diagnosed borderline intellectual functioning with

a GAF of 45. (Tr. 29-30). The ALJ did not further expand on these references or provide an analysis as to whether Plaintiff's borderline intellectual functioning exceeded the requirements for listing 12.05, notwithstanding low IQ and GAF scores.

Commissioner argues Plaintiff did not establish significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22 and cites to Phillips v. Astrue, No. 2:10-cv-1431, 2012 WL 443003 at *6 (W.D. Pa. Feb. 10, 2012) (objective testing must confirm mental retardation at a time prior to a claimant having reached the age of 22, and continuing until the point at which a claimant sought disability benefits). Comm'r Br. at 17, Doc 20.

Plaintiff counters that even though the record contained no diagnosis of intellectual disability, the Third Circuit has ruled in Markle v. Barnhart, 324 F.3d 182, 183-84 (3d Cir. 2003) that the claimant's activities and history were not inconsistent with his valid IQ scores, and remanded for consideration of the issue of whether his impairment was initially manifested before age 22. Pl. Reply at 4, Doc 21. In addition, Plaintiff states there is no independent element of proof with respect to adaptive deficits required by the listing. See Harrison v. Astrue, 2008 WL 4133085, *6-7 (W.D. Pa. 2008). Pl. Reply at 5 n.4, Doc 21.

Commissioner states that the Diagnostic and Statistical Manual of Mental Disorders, Text Revised, 42 (DSM-IV-TR) (4th ed. 2000) ("DSM-IV-TR") advises that adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting. The Listings describe adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring

appropriately for your grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. Pt. 404, subpt. P., app. 1 § 12.00C(1). Comm'r Br. at 17-18, Doc 20.

The Commissioner further avers the ALJ reviewed the evidence before him and, in finding that Plaintiff had moderate restrictions or difficulties in activities of daily living, social functioning, and concentration, persistence, or pace, appropriately did not find that Plaintiff had the requisite deficits in adaptive functioning prior to age 22 (Tr. 27). However, this analysis by the ALJ appears to be referring to the mental listing criteria of paragraph C (paragraph D in 12.05) and not whether Plaintiff met the diagnostic description of adaptive deficits prior to age 22 under listing 12.05. See id.

Plaintiff argues the ALJ did not make a finding that Plaintiff failed to meet the criteria of adaptive deficits before age 22. Plaintiff continues that had the ALJ made a finding that Plaintiff had no adaptive deficits, such a finding would have been completely unsupported by the record. Plaintiff graduated from high school in special education classes with the assistance of a Mobile Therapist and attempted to attend community college in order to study custodial maintenance (Tr. 476). When he was 19, Plaintiff had "difficulty inhibiting the impulse to speak disrespectfully to teachers," "tends to try to avoid doing work or going to class," "continues to make poor social decisions," "lacks awareness of the potential dangers of engaging in" "inappropriate, sexualized behaviors," and "up until just a few weeks ago, [he] often came to school with very unkempt hair and noticeable body odor" (Tr. 476-77, 478-79). Plaintiff states that while the listing does not require any particular degree of severity of adaptive deficits, it is clear that Plaintiff's deficits are significant and more than sufficient to qualify for benefits under the listing. Pl. Reply at 5-6, Doc 21.

In Ogin, a recent Middle District Court case, the cited ALJ decision made the following analysis regarding the diagnostic description element of the listing. "When viewing the [Plaintiff's]

adaptive functioning it appears that he has obtained a drivers license, and thereby passed both the written exam and field test, he engages in child care and parental oversight, helps out with chores around the house, performs his activities of daily living and [is] independent regarding self-care, personal hygiene and daily routines. He is also apparently able to do some simple meal preparation. The [Plaintiff's] wife works, and thus the [Plaintiff] does have time home by himself, and also with the kids for intervals of time. There also appear to be intervals of work efforts including sales associate at a retail store." Ogin, No. 3:13–cv–01365, 2014 WL 2940599, at *9. However, the ALJ made no similar analysis in this case regarding the diagnostic description criteria of adaptive deficits prior to age 22 under listing 12.05.

### b. Listing 12.05 Intellectual Disability Paragraph C First Prong

Plaintiff contends he meets the first prong of paragraph C based on his verbal IQ score of 68. Pl. Br. at 5, Doc 13.

As is relevant to Plaintiff's claim, the severity level of "paragraph C" is satisfied where a plaintiff has "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. A Plaintiff has an impairment of listed severity under § 12.05 where the alleged impairment "satisfie[s] the diagnostic description in the introductory paragraph [of § 12.05] and any one of the four sets of criteria." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Ogin, No. 3:13–cv–01365, 2014 WL 2940599, at *9.

On September 30, 2010, Plaintiff saw state agency psychologist Jeffrey Fremont, Ph.D., for a clinical interview and administration of the Wechsler Adult Intelligence Scale – Fourth Edition. Dr. Fremont noted that Plaintiff, 20 years old, graduated from high school in the special education

class, had a few friends, lived with his mother, brother and uncle, and for the most part remained isolated (Tr. 540). During IQ testing, Dr. Fremont noted that Plaintiff seemed fairly methodical in his approach to his questions, utilized a trial and error approach, sought reassurance, was cautious in his approach to all tasks presented, and asked questions when he did not understand something (Tr. 542). Plaintiff's IQ testing results revealed verbal comprehension of 68, perceptual reasoning of 77, working memory of 83, processing speed of 76, and a full-scale score of 71 (Tr. 543).

Commissioner argues Dr. Fremont did not state that Plaintiff's IQ scores were valid. Comm'r Br. at 15, Doc 20. Plaintiff responds Dr. Fremont did not state the scores he obtained were invalid but remarked that Plaintiff "was polite and cooperative" during the testing, that "he attempted all the tasks," and that he "seemed to be fairly methodical in his approach to the questions" (Tr. 542). Plaintiff argues the Third Circuit has inferred IQ test validity from a report which did not expressly address this issue. ("Obviously Dr. Williams concluded that the scores he reported were valid, as he did not qualify them or find that they were inconsistent with the various positive aspects he noted in [plaintiff's] appearance, demeanor and conduct"). Markle, 324 F.3d 182, 187.

The ALJ appears to accept the validity of the IQ tests. The ALJ noted "[w]ith his learning disabilities / borderline intellectual functioning evident in his IQ testing, he has issues with regard to concentration, persistence or pace." (Tr. 27). The ALJ further stated, "[i]n this case the IQ scores in the consultative examination all exceed the requirements of the paragraph except for verbal comprehension, which was 68." (Tr. 28).

Commissioner argues the ALJ may reject IQ scores that are inconsistent with the record as long as he adequately explains his basis for doing so. Schmidt v. Commissioner of Social Security, 2013 WL 1386881 at *1 (W.D. Pa.) (citing Miller v. Astrue, 2011 WL 2580516 at *6 n.5 (E.D. Pa.)

(quoting Lax v. Astrue, 489 F.3d 1080, 1087 (10th Cir. 2007 (upholding the ALJ's rejection of IQ scores as invalid because it was "not an accurate reflection of [a claimant's] intellectual abilities.")). Comm'r Br. at 18, Doc 20.

While this is true, the ALJ never specifically rejected Plaintiff's IQ scores. An ALJ "cannot reject evidence for no reason or the wrong reason." Mason, 994 F.2d at 1066. In this case, the ALJ's reasoning for rejecting Plaintiff's low IQ scores is absent from the decision.

The Commissioner states the ALJ adequately explained his basis for finding Plaintiff did not meet the requirements of 12.05C. He noted that Plaintiff did well in the 10th through 12th grades, graduated from high school, had a GAF score of 55, took care of his ill uncle on a full-time basis by feeding him, getting him out of bed, giving him his medication, and providing whatever care was needed, and attended community college for one year. The ALJ also found that based on the record evidence as a whole, Plaintiff was able to understand, remember and carry out simple instructions (Tr. 29-31). This review of the record by the ALJ referred to Plaintiff's residual functional capacity and also to rate the severity of mental impairments under paragraph B of the mental listings (paragraph D for listing 12.05) (Tr. 28-29). There is no evidence from the decision that this analysis referred to evaluating the criteria for listing 12.05C. See id.

    **c.**    **Listing 12.05 Intellectual Disability Paragraph C Second Prong**

Plaintiff contends he meets the second prong of paragraph C based on the ALJ's finding that Plaintiff's impairments are "severe" and restrict him to a limited range of light work (Tr. 28). Pl. Br. at 5, Doc 13. The Commissioner did not respond to this allegation. The ALJ's decision appears to state that Plaintiff does not meet the second prong of paragraph C, but it is unclear.

"With respect to the second criterion, the issue of whether a Plaintiff has another impairment

which imposes an additional and significant work-related limitation of functioning is evaluated under the same standard applied in step two of the sequential evaluation process. See Markle, 324 F.3d at 188 ( quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000) ('the Commissioner.....addressed the second prong of § 12.05C, stating that [w]e always have intended the phrase to mean that the other impairment is a 'severe' impairment as defined in [20 C.F.R.] §§ 404.1520(c) and 416.920(c).'); see also 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.00A ¶ 4. Here, at step two of the sequential evaluation process, the ALJ concluded that Plaintiff suffered from the severe impairments of depression and anxiety. Furthermore, the ALJ concluded that Plaintiff be restricted to the performance of a range of light work eroded by several additional postural and non-exertional limitations based on the combination of his severe and non-severe impairments. In sharp contrast, at step three the ALJ found that Plaintiff had no other impairment imposing an additional and significant work-related limitation of function. The ALJ failed to provide any explanation reconciling these inconsistent conclusions. Based on the standard set by the SSA, we conclude that the ALJ erred as a matter of law at step three by rejecting as impairments which impose additional and significant work-related limitations of function the same impairments he found to be severe at step two. Accordingly, we recommend that the ALJ re-evaluate the issue of whether Plaintiff has another severe impairment imposing an additional and significant work-related impairment in satisfaction of the second criterion of listing 12.05C." Ogin, No. 3:13–cv–01365, 2014 WL 2940599, at *12.

    **d.    ALJ Analysis under Listing 12.05C Intellectual Disability**

In this case, the ALJ offered the following reasoning for rejecting Plaintiff under listing 12.05C. "Finally, the 'paragraph C' criteria of listing 12.05 are not met because the claimant does

not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. In this case the IQ scores in the consultative examination all exceed the requirements of this paragraph except for verbal comprehension, which was 68. The claimant has a history of attention deficit hyperactivity disorder and depression with psychotic features, but has unsuccessfully completed high school with learning support and has attempted college courses. The argument that he meets the criteria for this listing is not accepted by the undersigned." (Tr. 28).

This citation appears to be the extent of the ALJ's analysis with regard to listing 12.05, paragraph C. Unfortunately, this cursory review does not proceed properly through the introductory paragraph diagnostic description of listing 12.05 to evaluate whether Plaintiff has the intellectual disability of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Moreover, this analysis appears to be in error considering Plaintiff has a verbal IQ score of 68 and the ALJ found he has "severe" impairments and restricted him to a limited range of light work (Tr. 28). The decision, as written, fails to explain why the ALJ rejected Plaintiff under the introductory paragraph diagnostic description and the first prong of paragraph C. As for the second prong of paragraph C, this was an error of law. It is unclear from the decision why Plaintiff does not meet the criteria, and thus, the decision fails to be supported by substantial evidence. An ALJ "cannot reject evidence for no reason or the wrong reason." Mason, 994 F.2d at 1066. The Court finds it was an error of law for the ALJ to fail to properly evaluate Plaintiff under all the parts of listing 12.05C. Consequently, the ALJ's decision to reject Plaintiff under listing 12.05C is not supported by substantial evidence.

## V.     Recommendation

Accordingly, the Court recommends this case be remanded for re-evaluation of Plaintiff under listing 12.05C. In remand, the ALJ should evaluate Plaintiff under the criteria of listing 12.05C (Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22 . . . [and] A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function). 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

Since the Court recommends this case be remanded for further proceedings, it is unnecessary to address Plaintiff's contentions the ALJ failed to credit the opinion of the consultative psychologist without good reason and the ALJ failed to present a hypothetical question containing all of Plaintiff's limitations to the vocational examiner. Pl. Br. at 3, Doc 13. Such deficiencies, if they exist, can be remedied in a future decision.

Accordingly, it is HEREBY RECOMMENDED the final decision of the Commissioner of Social Security denying Plaintiff's Title XVI application for Supplemental Security Income be REMANDED to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties are further placed on notice that pursuant to Local Rule 72.3: Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a

copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: July 29, 2014                                                    s/Gerald B. Cohn
                                                                   GERALD B. COHN
                                                          UNITED STATES MAGISTRATE JUDGE